UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANNA MARIE RALEIGH,
          - Plaintiff


     v.                              CIVIL NO. 3:12-CV-00720 (TPS)


MICHAEL J. ASTRUE,
COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,
          - Defendant

## MAGISTRATE JUDGE'S OPINION

The plaintiff, Anna Marie Raleigh, brings this appeal under §§ 205(g) and 1631(c)(3) of the Social Security Act ("the Act"), as amended, 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision by the Commissioner of the Social Security Administration ("SSA") denying her application for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). The plaintiff has filed a motion for judgment on the pleadings or, in the alternative, remand for further administrative proceedings. **(Dkt. #10)**. The defendant has moved for an order affirming the decision. **(Dkt. #19)**. For the reasons stated below, the plaintiff's motion should be **GRANTED** in part and **DENIED** in part. It should be granted only to the extent the plaintiff seeks a remand for further administrative proceedings. The defendant's motion to affirm should be **DENIED**. 28 U.S.C. § 636(b)(1)(A).

## I.    STANDARD OF REVIEW

In reviewing a final decision of the Commissioner under 42 U.S.C. §§ 405(g) and 1383(c), the district court performs an appellate function.  Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981); Igonia v. Califano, 568 F.2d 1383, 1387 (D.C. Cir. 1977).  A reviewing court will "set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998).  See also Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)("As a general matter, when we review a decision denying benefits under the Act, we must regard the [Commissioner's] factual determinations as conclusive unless they are unsupported by substantial evidence")(citations omitted). "Substantial evidence" is less than a preponderance, but "more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  See Yancey v. Apfel, 145 F.3d 106, 110 (2d Cir. 1998); Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951).  See also New York v. Sec'y of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990)(stating that the court, in assessing

whether the evidence supports the Commissioner's position, is required to "review the record as a whole")(citations omitted). Still, the ALJ need not "reconcile every conflicting shred of medical testimony." Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981). In sum, "the role of the district court is quite limited and substantial deference is to be afforded the Commissioner's decision." Morris v. Barnhardt, 02 Civ. 0377 (AJP), 2002 U.S. Dist. LEXIS 13681, at *12 (S.D.N.Y. July 26, 2002).

The regulations promulgated by the Commissioner establish a five-step analysis for evaluating disability claims. Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner considers if the claimant is presently working in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the Commissioner next considers if the claimant has a medically severe impairment. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the severity requirement is met, the third inquiry is whether the impairment is listed in Appendix 1 of the regulations or is equal to a listed impairment. Id. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); Pt. 404, Subpt. P. App. 1. If so, the disability is granted. If not, the fourth inquiry is to determine whether, despite the severe impairment, the claimant's residual functional capacity allows him or her to perform any past work. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If a claimant demonstrates that no past work

can be performed, it then becomes incumbent upon the Commissioner
to come forward with evidence that substantial gainful alternative
employment exists which the claimant has the residual functional
capacity to perform.  Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).
If the Commissioner fails to come forward with such evidence, the
claimant is entitled to disability benefits.  Alston v. Sullivan,
904 F.2d 122, 126 (2d Cir. 1990); Berry v. Schweiker, 675 F.2d 464,
467 (2d Cir. 1982).

While the claimant bears the burden of proving the first four
steps, the Commissioner must prove the final one.  Berry, 675 F.2d
at 467.  Thus, if the claimant is successful in showing that she is
unable to continue her past relevant work, "the [Commissioner] then
has the burden of proving that the claimant still retains a
residual functional capacity to perform alternative substantial
gainful work which exists in the national economy.  Bapp v. Bowen,
802 F.2d 601, 604 (2d Cir. 1986).

## II.  DISCUSSION

### A.   The ALJ's Decision and Procedural History

The facts and procedural history are familiar to the parties.
As outlined above, the Commissioner uses a five-step sequential
evaluation process when evaluating disability claims.  20 C.F.R. §§
404.1520, 416.920.  At step one, the ALJ found that the plaintiff
had not engaged in any substantial gainful activity since her
alleged onset date of September 24, 2009. (Tr. 78).  At step two,

4

the ALJ found that the plaintiff had the following severe impairments: bipolar disorder, obsessive-compulsive disorder and anxiety disorder.  Id.  At step three, the ALJ determined that the plaintiff did not have any impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 79-82).

Before proceeding to steps four and five, the ALJ evaluated the record, as it then existed, in order to determine the plaintiff's residual functional capacity.  As noted by the ALJ, the plaintiff testified that she is unable to work due to overwhelming anxiety and panic attacks.  (Tr. 82).  She stated she lives with her husband and four children, and sees a therapist, Dr. Erum Shahab, on a monthly basis.  Id.  The plaintiff testified that while working as a cashier she has been reprimanded for "yelling at customers and coworkers," and continues to experience panic attacks once or twice per week on average.  Id.  She also stated that she continues to get depressed and have panic attacks despite medical treatment, and on some days she cannot get out bed.  (Tr. 82-83). Although the plaintiff testified that she gets "panicky, even on medication," the ALJ determined that this was not supported in the evidence.  (Tr. 83).  The ALJ stated that, while the plaintiff testified to significant psychiatric limitations and panic attacks, some of the medical progress notes indicated that she was "stable" or "ok."  (Tr. 83.)  According to the ALJ, the progress notes

showed that the plaintiff's condition "has been fairly stable on medications." (Tr. 84). The ALJ also noted that the plaintiff left work due to "pregnancy complications," rather than because of her mental impairments. Id.

The ALJ next opined that the plaintiff's demeanor at the hearing was inconsistent with a severely or markedly disabled individual, and noted that no difficulties were observed by an agency official who conducted a previous face-to-face interview with the plaintiff. (Tr. 83-84). The ALJ also considered the plaintiff's testimony and answers to an Activities of Daily Living (ADL) questionnaire which showed that the plaintiff could generally care for herself, her children and her house. Id.

Next, the ALJ considered the opinions of plaintiff's treating sources. In particular, he considered mental RFC reports completed by Lisa Archie, LSCW, and co-signed by Dr. Lori Sobel, the plaintiff's initial treating psychiatrist, as well as a letter from Dr. Shahab, her current treating psychiatrist.[1] Ms. Archie and Dr. Sobel diagnosed major depression, noting symptoms of anxiety, pressured and excessive speech, limited insight, and fear of germs. (Tr. 289-90). While the ALJ agreed with some aspects and formulations of these opinions, he gave little weight to other parts of their opinions. The ALJ accepted the opinions of Ms.

---

[1] The plaintiff initially treated with Ms. Archie and Dr. Sobel of Family Services of Greater Waterbury. After the plaintiff relocated to Ellington, she began seeing Dr. Shahab and Tracy Roberts, LCSW, at Ellington Behavioral Health.

Archie and Dr. Sobel, to the extent they stated the plaintiff could maintain personal hygiene, use good judgment, carry out single or multi-step instructions, focus long enough to finish assigned simple tasks, perform basic work activities at a reasonable pace and finish on time without difficulties. (Tr. 85, 290-91, 302-03). However, the ALJ disagreed with Ms. Archie and Dr. Sobels on two key aspects of their opinions.   The ALJ disagreed that the plaintiff had a "serious problem" in terms of handling frustration properly because she is "able to essentially maintain a household with four very young children," which "certainly requires an ability to handle a lot of frustration." (Tr. 85).   The ALJ also disagreed with Ms. Archie and Dr. Sobel that the plaintiff has "a very serious problem" performing work activity on a sustained basis," on the grounds that she stopped working due to pregnancy complications rather than her psychiatric impairments. Id.  The ALJ also assigned no special significance to Dr. Shahab's opinion, expressed in the form of a letter, that the plaintiff "is not able to seek gainful employment."   Id.   According to the ALJ, Dr. Shahab's opinion was not supported by the record, which included his treatment notes and other evidence regarding the plaintiff's ability to  perform a high level of daily activities.  The AlJ also discounted Dr. Shahab's opinion because it attempted to resolve an issue reserved to the Commissioner.   Id.

The ALJ assigned the greatest weight with respect to the

plaintiff's mental RFC to the opinion provided by Dr. Thomas Hill, a non-examining state agency medical consultant. (Tr. 86). Dr. Hill opined that the plaintiff has moderate limitations in several areas, including the ability to interact with the general public; respond appropriately to changes in a work setting; set realistic goals or make plans independently of others; perform activities within a schedule; maintain regular attendance; and be punctual within customary tolerances. (Tr. 66-67, 86). Dr. Hill also found the plaintiff to be moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 66, 86).

The ALJ stated that he took Dr. Hill's opinion with respect to these moderate limitations into consideration when formulating the plaintiff's RFC. The ALJ also noted Dr. Hill's opinion that, while the plaintiff has panic symptoms, depression and a low frustration tolerance for stress, which will at times disrupt optimal performance, she "does appear capable of engaging with adequate [concentration, persistence and pace] to perform [simple, routine and repetitive tasks] that are non time sensitive in nature, and do not require intense focus and concentration." (Tr. 66, 86). The ALJ further cited Dr. Hill's observation that the plaintiff has been dealing with her panic symptoms for the past decade, and has

8

been able to work despite her panic disorder in the past.  In support of this opinion, the ALJ again noted that the plaintiff left her job due to pregnancy considerations, rather than because of her psychiatric symptoms.  (Tr. 86-87).

Based on this analysis, the ALJ found that the plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, with the following non-exertional limitations:

> she is limited to performing simple, routine tasks in a stable work environment, without strict production/time requirements, without public contact, and without membership on teams.

(Tr. 82).  After making this finding, the ALJ proceeded to step four of the sequential evaluation and concluded that the plaintiff was unable to perform any past relevant work. (Tr. 87).  The burden, therefore, shifted to the defendant to come forward with evidence that substantial gainful alternative employment exists which the claimant has the residual functional capacity to perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Relying on the testimony of a vocational expert, and considering the plaintiff's age, education, work experience and residual functional capacity, the ALJ determined that the plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 87-88).  Accordingly, the ALJ held that a finding of "not disabled" was appropriate under the Act.  (Tr. 88).  The plaintiff requested review of the ALJ's

decision by the Appeals Council.  (Tr. 7-8).  The Appeals Council denied the request for review on March 16, 2012.  (Tr. 1-6).

**B.    Alleged Errors**

The plaintiff has identified four general areas of alleged error.  She alleges that the ALJ failed to follow the Treating Physician Rule, failed to properly evaluate the plaintiff's credibility, and relied upon flawed vocational expert testimony. She also alleges that new evidence submitted to the Appeals Council requires remand.  As addressed above, a reviewing court will "set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951).  See also New York v. Sec'y of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990)(stating that the court, in assessing whether the evidence supports the Commissioner's position, is required to "review the record as a whole")(citations omitted).  Importantly, in Perez v. Chater, the Second Circuit held that "new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." 77 F.3d 41, 45 (2d Cir. 1996).  Upon careful review of the entire administrative record,

including the additional evidence submitted to the Appeals Council, the Court concludes that certain aspects of the decision were not supported by substantial evidence, and the case should be remanded to the ALJ in accordance with this opinion.

### 1.   Alleged Errors Assigned to the ALJ

At the outset, the Court notes that it has significant concerns about whether the decision was supported by substantial evidence on the record originally before the ALJ.  Those concerns are based, in large part, on the ALJ's selective references to the medical records and his improper assignment of weight to the opinion evidence.  In summarizing the medical evidence, the ALJ referenced only those treating records in which the plaintiff appeared to be   "ok" or "doing well overall."   He failed to mention, for example, the records showing she was experiencing "what sounds like intense rage where she apparently blacks out," is "on the back end of a panic attack always," had "not been doing well at all," and had recently put a fist through a wall "in an effort to not hit her mother." (Tr. 313, 349-350).  The ALJ's synopsis of the medical records was incomplete, and remand is appropriate in order for the ALJ to properly evaluate the complete record.

Remand is also needed to rectify an error committed by the ALJ in his assignment of weight to the opinion evidence.  The regulations provide that a treating physician's medical opinion is

entitled to controlling weight if it concerns "the nature and severity of [the plaintiff's] impairment, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Id.; 20 C.F.R. §§ 404.1527(c)(2), 416.9247(c)(2). When the treating source's opinion is not entitled to controlling weight, the SSA considers several factors in evaluating how much weight to assign the opinion, including the length and nature of the treatment relationship, frequency of examination, his or her specialization, and the supportability and consistency of the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

While the ALJ generally should afford great weight to treating source opinions that are well-supported and consistent with the record, he is not required to accept every aspect of the treating physician's opinion. As explained in Social Security Ruling 96-2p, "[i]t is not unusual for a single treating source to provide medical opinions about several issues . . . [and] adjudicators must always be aware that one or more of the opinions may be controlling while others may not."

The ALJ accepted the opinions of Ms. Archie and Dr. Lori Sobel, to the extent they stated the plaintiff could maintain personal hygiene, use good judgment, carry out single or multi-step instructions, focus long enough to finish assigned simple tasks,

12

perform basic work activities at a reasonable pace and finish on time without difficulties. (Tr. 85, 290-91, 302-03). However, the ALJ disagreed with, and applied little weight[2] to, Ms. Archie and Dr. Sobel's assessment that the plaintiff had a "serious problem" in terms of handling frustration properly, and that she has "a very serious problem" performing work activity on a sustained basis."[3]

In discrediting the assessment of a serious problem handling frustration appropriately, the ALJ cited only the plaintiff's ability to "essentially maintain a household with four very young children" with some help from her mother. (Tr. 85). According to the ALJ, maintaining such a household "certainly requires an ability to handle a lot of frustration." Id. That may well be, but this general assumption, without more, is simply not enough to discredit a treating source's assessment of a serious problem. Moreover, the record indicates that the plaintiff has actually had significant problems handling frustration at home. For example, as the plaintiff testified at the hearing, on at least one occasion the stress of caring for her children resulted in her checking herself into the emergency room. According to the plaintiff, she was unable to cope with her newborn son's crying and her daughter's

---

[2]In light of the ALJ's statement that "[w]hile I agree with some aspects/formulations in these opinions, other parts of these opinions are given little weight," the Court interprets this as an indication that he gave "little weight" to the two aspects with which he "disagree[d]." (Tr. 85).

[3]While the ALJ stated that he disagreed with the assessment of "a very serious problem" in this area, Ms. Archie and Dr. Sobel actually only assessed "a serious problem" with performing work activity on a sustained basis. (Tr. 85, 303).

complaint of not feeling well, started to panic, and had to call two friends to care for her and the children.  (Tr. 20-21). She went to the emergency room because she "couldn't ever put [her] kids in that position again [where she] was at home alone with them and [she] couldn't take care of them or couldn't control the panic to some degree."  (Tr. 21).[4]

The defendant has asserted in his brief that "[t]here is no further indication in the record that at any time [after the emergency room visit in] December, 2009, the [p]laintiff found herself unable to cope with the demands of caring for three or four children, or for that matter, with any other source of frustration."  (Dkt. #19-1 at 20).  The record demonstrates otherwise.  On September 13, 2010, the plaintiff reported she "recently had a panic attack due to something her daughter did." (Tr. 333).  The record also shows she put her fist through a wall in October, 2010 "in an effort to not hit her mother."  (Tr. 343). The plaintiff's "low frustration tolerance for stress" was also noted by Dr. Thomas Hill, the state agency medical consultant whose opinion was afforded "the greatest weight" by the ALJ. (Tr. 45). Thus, Ms. Archie, Dr. Sobel and Dr. Hill all concurred that the plaintiff had a significant problem handling frustration, and the medical records support these opinions.

---

[4]Although the associated medical records from this emergency room visit were not available to the ALJ at the time of his decision, they were referenced at the hearing and subsequently submitted to the Appeals Council and made part of the record. (Tr. 5, 20-21).  On remand, they should be properly considered.

14

Moreover, on two separate occasions, in the comments directly below the assessment on the plaintiff's ability to handle frustration, Ms. Archie and Dr. Sobel noted that the plaintiff's intelligence is "an impediment at times in a work environment which might require more flexible thinking/authority figures being correct," and her "strong opinions, feelings of being correct can get in the way of cooperation necessary in work settings, limited tolerance for others idea/direction from authority." (Tr. 290, 302). Thus, even if the plaintiff was able to handle the frustration associated with running a household of small children, it would not likely constitute sufficient evidence for discrediting a treating source's opinion that a patient with mental disorders has a serious problem handling frustration with authority figures.

The medical records, as a whole, support Ms. Archie's and Dr. Sobel's opinions that the plaintiff has a serious problem handling frustration appropriately. These treating source opinions are consistent with the assessment of Dr. Hill, the state agency consultant, and are not inconsistent with other substantial evidence in the record. Thus, to the extent they were co-signed by Dr. Sobel, they are entitled to controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). While Ms. Archie is not a physician, and thus her opinion is not entitled to controlling weight on its own, the opinions are entitled to, at least, substantial weight using the factors outlined in 20 C.F.R. §§

404.1527(c)(2)-(6) and 416.927(c)(2)-(6).  Accordingly, the ALJ's decision is not supported by substantial evidence in so much as it gives "little weight" to the opinions of Ms. Archie and Dr. Sobel that the plaintiff has a serious problem handling frustration appropriately.  The Court finds it reasonable to conclude that the plaintiff's mental residual functional capacity is further restricted by her serious problem handling frustration, and that such a limitation may not have been properly raised to the vocational expert.  On remand, the ALJ shall give, at minimum, substantial weight to the opinion that the plaintiff has a serious problem handling frustration appropriately, and assess her RFC accordingly.

### 2.   The Appeals Council's Review of Additional Evidence

The need to remand this case is further amplified by the additional evidence provided to the Appeals Council after the ALJ had issued his decision.  This new evidence consisted of a mental RFC opinion from her current treating psychiatrist, Dr. Shahab, a mental RFC opinion from her current treating licensed clinical social worker, Ms. Roberts, and medical records concerning her visit to the Waterbury Hospital emergency room and crisis center. The Appeals Council determined that the evidence did not "include any information warranting a change in the outcome of [the plaintiff's] claim."  (Tr. 2).  All of these reports are part of the administrative record for judicial review.  Perez, 77 F.3d at

45.

Pursuant to the Commissioner's regulations, the Appeals Council must consider any evidence submitted to it which is new and material to the relevant time period.  See id., 77 F.3d at 44.  The defendant argues that Dr. Shahab's and Ms. Roberts's opinions do not meet this test.  Contrary to the argument of the defendant, these reports are "new" and not duplicative of other documents in the record.  Prior to the submission of this evidence to the Appeals Council, there was no function-by-function assessment from Dr. Shahab on the plaintiff's work-related mental activities, nor was there any opinion provided by Ms. Roberts.  While the defendant asserts in his brief that Ms. Roberts' opinion is cumulative in that it is "substantially similar" to the two opinions submitted by Ms. Archie (and counter-signed by Dr. Sobel) that the ALJ considered, the Court disagrees.  (Dkt. #19-1 at 37).  For example, on the critical issue of whether the plaintiff is able to perform work activity for a normal work week, Ms. Roberts assessed a more serious limitation than did Ms. Archie and Dr. Sobel.  That is, Ms. Roberts assessed the plaintiff as "markedly limited" in this area, while Ms. Archie and Dr. Sobel assessed her as having an obvious or serious problem.[5]  (Tr. 291, 303, 469).  Moreover, as the

---

[5]Under the rating scale used in Ms. Roberts' report, an assessment of markedly limited "effectively precludes the individual from performing the activity in a meaningful manner."  (Tr. 467).

plaintiff's condition has not been static over time,[6] Ms. Roberts' assessment of the plaintiff's psychiatric limitations on September 27, 2011 is not "cumulative" of the assessments conducted by Ms. Archie and Dr. Sobel on November 18, 2009 and March 2, 2010.

The reports are also "material."  In order to be material, there must be "a reasonable probability that the new evidence would have influenced the [ALJ] to decide [the plaintiff's] claim differently." Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988). At step five of the sequential evaluation, the ALJ posed a hypothetical to the vocational expert that corresponds to the RFC, and the expert provided three representative jobs that the plaintiff could perform.  Importantly, when the ALJ added a limitation that the plaintiff would miss up to one work day per week because of workplace stress, the vocational expert testified that a person "clearly" could not perform those jobs. (Tr. 26).  In their reports submitted to the Appeals Council, Ms. Roberts and Dr. Shahab each opined that the plaintiff is likely to be absent from work "more than three times a month" as a result of the impairments or treatment.  (Tr. 472).  This would render the plaintiff incapable of performing any of the representative jobs offered by the vocational expert.  The import of these opinions cannot be overstated, as it is the Commissioner who bears the burden of

---

[6]For example, the ALJ, and the Commissioner have argued that the plaintiff showed improved functioning during the time periods in which she was on certain medications. (Dkt. #19-1 at 20; Tr. 84).

proving that the plaintiff retains the RFC to perform alternative substantial gainful work which exists in the national economy. Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).

The Court agrees with the plaintiff that Dr. Shahab's opinion is significantly dissimilar to that of Ms. Archie and Ms. Roberts. That is, Dr. Shahab assessed the plaintiff as significantly more limited than either Ms. Archie, Ms. Roberts, or the ALJ found. For example, Dr. Shahab assessed the plaintiff as "markedly limited" in sixteen of the twenty specific areas of mental functioning, as compared to the one area identified by Ms. Roberts. (Tr. 468-70, 477-79). However, that is not to say that Dr. Shahab's opinion is wholly unsubstantiated by the record, as the defendant argues. Dr. Shahab's September 13, 2010 progress note indicates the plaintiff reported she is "on the back end of a panic attack always." (Tr. 349). On October 10, 2010, the plaintiff reported to Dr. Shahab that she had "not been doing well at all," and had recently put a fist through a wall "in an effort to not hit her mother." (Tr. 350). Dr. Shahab's report also cites the plaintiff's visit to the emergency room as a result of a panic attack, the records of which were not available to the ALJ or the consulting examiner, Dr. Hill. (Tr. 4, 426-462, 480). These records lend support to Dr. Shahab's conclusions that the plaintiff is incapable of even "low stress" at work, and has a marked limitation in her ability to complete a normal workweek without interruptions from psychologically based

symptoms.  (Tr. 478, 480).  There is also support for his opinion, which he shares with Ms. Roberts, that the plaintiff is likely to be absent from work "more than three times a month" as a result of the impairments or treatment, rendering her incapable of performing any of the representative jobs offered by the vocational expert. (Tr. 26, 481).

In fact, Dr. Shahab's opinion, when combined with those of Dr. Sobel, Ms. Archie and Ms. Roberts, brings the count to four separate professionals who have opined that the plaintiff either has a marked limitation in her ability to complete a normal workweek, or would likely be absent from work more than three times per month.  While the ALJ disagreed with Ms. Archie's and Dr. Sobel's opinion regarding the plaintiff's marked limitation in ability to complete a normal workweek, on the grounds that she stopped working due to her pregnancy complications, it is "reasonably probable" that the addition of the new reports to the administrative record would lead to a different conclusion. Tirado, 842 F.2d at 597. While the defendant argues that many of Dr. Shahab's findings are unsupported by, or conflict with other evidence in, the record, the ALJ is responsible for weighing the evidence and resolving any conflicts, which he is directed to do on remand.  If the ALJ finds that Dr. Shahab's opinion is not entitled to controlling weight under the treating source rule, he shall evaluate how much weight to assign the opinion using the factors

identified in 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6).

The Court finds there is a "reasonable probability" that, had the ALJ and the consulting examiner had the opportunity to review the documents submitted to the Appeals Council, the ALJ's analysis of the opinion evidence, evaluation of the plaintiff's credibility, and determination of the plaintiff's mental RFC would have been adjusted in a manner favorable to the plaintiff.  Thus, there is a "reasonable probability" that consideration of the new evidence would have influenced the ALJ to decide the plaintiff's claim differently.  In this case, the ALJ relied heavily on the opinions of a non-examining state agency consultant.  That consultant, Dr. Hill, did not have the opportunity to consider the opinions of Dr. Shahab or Ms. Roberts, or the records from the visit to the Waterbury Hospital emergency room and crisis center.  Accordingly, on remand, the ALJ is directed to provide the consultant with the entire medical record, including the material that was not available when he assessed the plaintiff's impairments.  After obtaining the necessary medical opinions, the ALJ shall reconsider the case based on all of the evidence, and in accordance with the regulations.[7]

---

[7]In light of the Court's ruling that the case be remanded for consideration of new evidence, it is unnecessary for the Court to address all of the errors alleged by the plaintiff, including the improper evaluation of her credibility and the reliance upon flawed vocational testimony.

## III. CONCLUSION

The plaintiff's motion for judgment on the pleadings or, in the alternative, remand for further administrative proceedings **(Dkt. #10),** should be **GRANTED** in part and **DENIED** in part.  It should be granted only to the extent the plaintiff seeks a remand for further administrative proceedings consistent with this opinion.  The defendant's motion to affirm **(Dkt. #19)** should be **DENIED.**  28 U.S.C. § 636(b)(1)(A).

The parties may timely seek review of this recommended ruling in accordance with Rule 72(b) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 72(b).  Failure to do so may bar further review.  28 U.S.C. § 636(b)(1)(B); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

**Dated at Hartford, Connecticut this 9ᵗʰ day of August, 2013.**

**/s/ Thomas P. Smith**
**THOMAS P. SMITH**
**UNITED STATES MAGISTRATE JUDGE**